IN THE IOWA DISTRICT COURT FOR WORTH COUNTY

| | | |
|---|---|---|
| STEVEN PETERSON, | * | No. |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | PETITION |
| | * | AND JURY DEMAND |
| MARTIN MARIETTA | * | |
| MATERIALS, INC., and, | * | |
| JEFF BALDWIN, and | * | |
| STACY OLBERDING, | * | |
| individually and in their corporate | * | |
| capacities, | * | |
| | * | |
| Defendants. | * | |

COMES NOW the Plaintiff, Steven Peterson, by and through his attorneys, Sherinian & Walker Law Firm and Reindl Law Firm, and for his petition and jury demand against the Defendant, Martin Marietta Materials, Inc., Jeff Baldwin, and Stacy Olberding, individually and in their corporate capacities, states as follows:

## JURISDICTION AND VENUE

1. This action is brought pursuant to the American with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, the Iowa Civil Rights Act, Iowa Code §216.6(1)(a), and Family Medical Leave Act (FMLA), 29 USC §2602, *et seq.*

2. The unlawful acts alleged below have been committed in Worth County, Iowa and therefore venue is proper in this Court.

3. The amount in controversy exceeds the jurisdictional requirements of this Court.

## THE PARTIES

4. At all times material herein, the Plaintiff, Steven Peterson, was and is a citizen and resident of Mason City, Cerro Gordo County, Iowa and employee of Defendant Martin Marietta Materials, Inc. (hereafter Defendant "Martin Marietta"). At the time of his separation, Plaintiff was assigned to work at Defendant Martin Marietta's worksite located in Worth County, Iowa.

5. Defendant, Martin Marietta Materials, Inc., is a North Carolina corporation with its principal place of business in Raleigh, North Carolina, and is licensed to do business in Iowa.

6. Defendant Jeff Baldwin is a citizen and resident of Hardin County, Iowa and was a managerial employee of the Defendant Martin Marietta who was personally involved in the discriminatory conduct alleged in this Petition. At all times material hereto Defendant Baldwin was the Plant Manager for Defendant Martin Marietta.

7. Defendant Stacy Olberding is a citizen and resident of Hardin County, Iowa and was a managerial employee of the Defendant Martin Marietta who was personally involved in the discriminatory conduct alleged in this Petition. At all times material hereto Defendant Olberding was the human resources representative for Defendant Martin Marietta.

8. Plaintiff worked for Defendant Martin Marietta at its 1424 Highway 105, Worth County, Iowa address. Defendant Martin Marietta has an office in Worth County, Iowa.

9. The Plaintiff was employed by Defendant Martin Marietta from April of 2005 to November 13, 2012.

## CONDITIONS PRECEDENT

10. Plaintiff has filed, within 300 days of the date of his termination, a charge of disability discrimination against the Defendants with the Iowa Civil Rights Commission (ICRC), which was cross-filed with the Equal Employment Opportunity Commission (EEOC). A copy of said charge is attached hereto as Exhibit A and Plaintiff incorporates by reference all factual allegations appearing in the charge.

11. On July 31. 2014, the Iowa Civil Rights Commission issued an Administrative Release (letter of right-to-sue), a copy of which is attached hereto as Exhibit B.

12. On August 1, 2014, the Equal Employment Opportunity Commission issued a Notice of Right to Sue, a copy of which is attached hereto as Exhibit C.

13. Plaintiff exhausted his administrative remedies and this suit is timely filed.

## FACTUAL BACKGROUND

14. In November 2010, Plaintiff was hospitalized for two weeks in the Intensive Care Unit because of a medical condition.

15. In late 2010 and early 2011, Plaintiff was off work and on leave protected by the Family Medical Leave Act (FMLA) for approximately six months.

16. Thereafter, Plaintiff returned to work for Defendant Martin Marietta and at all times material hereto was qualified for his employment with Defendant Martin Marietta.

17. In August 2011, Plaintiff began treating for his medical condition which caused Plaintiff to appear very pale and to experience severe side effects including but not limited to excruciating pain, fatigue, internal bleeding, and vomiting.

3

18. Coworkers and managerial employees noticed Plaintiff's changes in appearance and inquired whether he was alright. Plaintiff shared that he was undergoing treatment for a medical condition, what that treatment entailed, the impact it had on him, and educated his coworkers and managers about his medical condition.

19. The treatment Plaintiff was undergoing impacted his health and activities of daily living to a significant degree and caused such severe side effects that Plaintiff was taken from work on one occasion in approximately late November to early December of 2011 to the emergency room. Plaintiff was reprimanded by Defendant Martin Marietta for not returning to work later that afternoon.

20. Approximately two weeks later, in December 2011, Plaintiff again went on leave protected by the FMLA. During his leave, Plaintiff stayed in contact with Defendant's Olberding, and shared information with her about the status of his medical condition.

21. Defendant Olberding repeatedly told Plaintiff that he could come back to work only when he was "feeling 100%", asked him personal questions about his condition, and his expected return to work date.

22. Plaintiff understood from Defendant Olberding that he would not be permitted to return to work with restrictions or limitations and, that if he asked for an accommodation, he would not be permitted to return to work.

23. Defendant Martin Marietta does not have a "light duty" program and does not accommodate employees with restrictions or disabilities.

24. In May of 2012, Plaintiff was released to return to work without any restrictions or limitations.

4

25. Plaintiff was not reinstated to his previous position on Portable #2. Defendant Martin Marietta acknowledged Plaintiff's request that he be reinstated to his old crew but was told that the change was only temporary while it figured out a "place to stick" him.

26. Plaintiff was no longer permitted overtime, assigned to work nights, moved from position to position, and placed in the lowest position possible of "Gopher" to the younger employees with less experience and seniority.

27. Defendant Martin Marietta's practice when it wanted someone to quit was to move the person from position to position and from shift to shift until they resigned. Plaintiff had personally observed Defendants do this to others before him who had returned from medical leaves.

28. Defendant Martin Marietta required Plaintiff to wear a pair of prescription sunglasses at all times while he was working. Because Plaintiff worked days, he selected the shaded safety glasses. Defendant Martin Marietta did not issue Plaintiff new unshaded prescription safety glasses.

29. In addition, the day after Plaintiff returned from leave, Plaintiff was removed from the Safety Captain position he had previously enjoyed before going on leave. When Plaintiff was removed from his Safety Captain position he asked if he was being demoted to which Guy Deeley, Plaintiff's supervisor, responded "yeah, pretty much."

30. The Safety Captain position was a position of prominence and prestige within the Company and which brought with it benefits including but not limited to time

5

off, awards, recognition, training duties, fine dinners with the president of the company, financial payment, and increased upward job mobility

31. From his return to work in May of 2012 until his termination in November of 2012, Plaintiff repeatedly asked to be returned to his old position in Portable 2 and to be returned to the Safety Captain position.

32. Plaintiff complained to Defendant Stacy Olberding about his removal as Safety Captain and threatened to call the Ethics Hotline. Ms. Olberding responded that he could go ahead and do that but that the hotline personnel would simply refer the matter back to her and she was the one of the people who originally decided to remove him from the position.

33. From Plaintiff's return to work in May of 2012 until his termination in November of 2012, Defendant Stacy Olberding repeatedly and regularly asked Plaintiff whether he was "feeling 100%".

34. From Plaintiff's return to work in May of 2012 until his termination in November of 2012, Plaintiff was ridiculed by coworkers over the radio with comments such as "big baby needs to eat his lunch", which was a reference to his medical condition because he needed to eat his lunch to take his medicine and he needed to be able to use the bathroom because of the side effects of his medication. This statement was made so that managers at the facility could overhear it.

35. At times, Plaintiff was denied his request to eat his lunch and take his medication or use the bathroom.

36. Coworkers referred to Plaintiff as "Dead Man Walking" in the break room, within hearing of managerial employees.

6

Case 3:14-cv-03059-LTS-CJW   Document 3   Filed 09/30/14   Page 6 of 11

37. Coworkers told Plaintiff that Defendant Stacy Olberding and other managerial level employees made fun of him behind his back because of his medical condition.

38. Defendants hired one or two other new employees for Portable 2 after Plaintiff returned from leave in May of 2012.

39. Plaintiff was told by a coworker that the Defendants planned to "bounce him around" between various positions until he quit.

40. On November 9, 2012, Defendant Martin Marietta directed Plaintiff to go into a quarry while it was dark out to work. There were no lights at the quarry. At approximately 6:45 a.m., Plaintiff backed into a rock causing damage to the truck.

41. On November 9, 2012, the sunrise occurred at 6:49 a.m.

42. On November 13, 2012, the Defendants terminated the Plaintiff from his employment because Defendants stated they needed to let Plaintiff go "before he hurt himself or someone else".

43. Other employees, who were not disabled, perceived as disabled and/or taken FMLA leave, had been in accidents, and sometimes multiple accidents, within one year but were not fired.

44. Upon information and belief, Plaintiff is the only person fired for causing damage to company property by the management team existing at the time of Plaintiff's termination composed of Defendant Baldwin, Defendant Olberding and Bruce Hansen.

## COUNT I

### 42 U.S.C. § 12101 et. seq.
### (Disability Discrimination)

45. Plaintiff repleads the allegations of paragraph 1 through 44 above as if fully set forth herein.

46. Plaintiff is disabled within the meaning of 42 U.S.C. § 12102(2) and Plaintiff was an employee of Defendant Martin Marietta as defined in 42 U.S.C. § 12111(4).

47. Defendant Martin Marietta is an employer within the meaning of 42 U.S.C. § 12111(5) and employs more than fifteen (15) persons.

48. Defendants discriminated against the Plaintiff in the terms and conditions of his employment because of his disability in violation of 42 U.S.C. § 12101 *et seq.*

49. The Defendants failed to accommodate the Plaintiff's disability in violation of 42 U.S.C. § 1211 *et seq.*

50. The Defendants terminated the Plaintiff because of his disability, his requests for accommodation and complaints of discrimination in violation of 42 U.S.C. § 1211 *et seq.*

51. As proximate cause of the discriminatory actions by Defendants, Plaintiff has been damaged. Specifically he has suffered lost wages and benefits, emotional and mental anguish, humiliation, embarrassment, and loss of enjoyment of life.

52. Defendants acted intentionally, maliciously, or with reckless indifference to the rights of Plaintiff and knew or should have known that their actions were illegal, and, therefore, punitive damages are appropriate.

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment against Defendants and award damages, including damages for lost wages and benefits, emotional distress, mental anguish, compensatory relief, punitive damages, reasonable attorney fees, and court costs with interest, as provided by law and such other and further relief including reinstatement and back pay, as the Court deems just and equitable.

## COUNT II

### Chapter 216 Code of Iowa (2005)
### (Discrimination on the Basis of Disability)

53. Plaintiff repleads the allegations of paragraph 1 through 52 above as if fully set forth herein.

54. Defendants discriminated against the Plaintiff in the terms and conditions of his employment because of his disability in violation of Chapter 216 *et seq.*, Code of Iowa (2005).

55. Defendants failed to accommodate the Plaintiff in violation of Chapter 216 *et seq.*, Code of Iowa (2005).

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment against the Defendants and award damages, including damages for lost wages and benefits, emotional distress, mental anguish, compensatory relief, damages, reasonable attorney fees, and court costs with interest, as provided by law and such other and further relief including reinstatement and back pay, as the Court deems just and equitable.

## COUNT III

### 42 U.S.C. § 2000 et seq. & Iowa Civil Rights Act
### (Retaliation)

56. Plaintiff repleads the allegations of paragraph 1 through 55 above as if fully set forth herein.

9

57. Plaintiff opposed discrimination in the workplace.

58. Defendants took adverse employment action against Plaintiff in retaliation for his opposition to discrimination in the workplace, in violation of 42 U.S.C. § 2000 et seq. and the Iowa Civil Rights Act.

59. As a proximate cause of Defendants' illegal actions, Plaintiff has been damaged.

60. Defendants acted with malice and/or reckless indifference to the rights of Plaintiff and therefore he is entitled to punitive damages.

**WHEREFORE**, Plaintiff respectfully prays that this Court enter judgment against the Defendant and award damages, including damages for lost wages and benefits, emotional distress, mental anguish, compensatory relief, damages, reasonable attorney fees, and court costs with interest, as provided by law and such other and further relief including reinstatement and back pay, as the Court deems just and equitable.

## COUNT IV

### Retaliation in Violation of the FMLA

61. Plaintiff repleads the allegations of paragraph 1 through 60 above as if fully set forth herein.

62. Plaintiff engaged in statutorily protected conduct.

63. Plaintiff suffered an adverse employment action.

64. There is a causal connection between the protected conduct and the adverse employment action.

Case 3:14-cv-03059-LTS-CJW   Document 3   Filed 09/30/14   Page 10 of 11

65. As a result of Defendants' acts and omissions, Plaintiff has in the past and will in the future suffer damages including, but not limited to lost wages, benefits, future earnings, and other emoluments of employment.

**WHEREFORE**, Plaintiff respectfully prays that this Court enter judgment against the Defendants and award damages, including damages for lost wages and benefits, emotional distress, mental anguish, compensatory relief, damages, reasonable attorney fees, and court costs with interest, as provided by law and such other and further relief including reinstatement and back pay, as the Court deems just and equitable.

## JURY DEMAND

66. Plaintiff hereby demands a trial by jury in this matter.

Respectfully Submitted,

SHERINIAN & WALKER LAW FIRM

By /s/ Mark D. Sherinian
Mark D. Sherinian, PK0007701
302 Neptune Building
4401 Westown Parkway
West Des Moines, IA 50266
Telephone: (515) 224-2079
Facsimile: (515) 224-2321
Email: sherinianlaw@msn.com

REINDL LAW FIRM

By: /s/ Sarah A. Reindl
Sarah A. Reindl, AT0010690
100 First Street NW, Suite 120
Mason City, Iowa 50401
Fax/Phone: 641-423-6843
sarah@reindllawfirm.com

ATTORNEYS FOR PLAINTIFF